UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

      - v. -                                            :            S2 13 Cr. 161 (LAP)

ERIC STEVENSON,                              :

               Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE GOVERNMENT'S SENTENCING MEMORANDUM


PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

Paul M. Krieger
Brian A. Jacobs
Assistant United States Attorneys
Pishoy Yacoub
Special Assistant U.S. Attorney
      - Of Counsel -



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaz*
*New York, New York 10007*

May 15, 2014

**BY ECF AND BY HAND**

The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

   Re: <u>United States v. Eric Stevenson,</u>
      **S2 13 Cr. 161 (LAP)**

Dear Judge Preska:

  The defendant, Eric Stevenson, is scheduled to be sentenced in the above-referenced case on Wednesday, May 21, 2014 at 3:00 p.m.   The Government respectfully submits this letter in advance of that sentencing, and in response to defense counsel's letter dated May 7, 2014 ("Def. Ltr."), in which defense counsel requests a sentence of 24 months or less,[1] which is well below the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 51 to 63 months' imprisonment.   (Def. Ltr. 9).   As set forth in more detail below, the Court should impose a sentence within the Guidelines range.   Over the course of a year, Stevenson accepted multiple cash bribes from four corrupt businessmen who ran adult daycare centers in New York City in exchange for taking official actions, in his capacity as a member of the New York State Assembly, to help those businessmen.   Among other things, in exchange for these bribe payments, Stevenson arranged for a law to be drafted and proposed in the Assembly that would have made it illegal for any competing adult daycare businesses to open in New York City for three years.   This legislation was worth hundreds of thousands of dollars to the corrupt businessmen.   Because Stevenson's offense conduct amounted to a brazen effort to sell his core function as a lawmaker—the ability to make laws—in exchange for money, a sentence within the Guidelines range is appropriate.

---

[1] Stevenson requests a sentence no greater than the sentences received by his co-defendants.   (Def. Ltr. 9). His co-defendants received sentences between 9 and 24 months' imprisonment.   (United States Probation Department's Draft Presentence Investigation Report ("PSR") ¶¶ 11-14).

Honorable Loretta A. Preska
May 15, 2014
Page 2

## BACKGROUND

### A.    The Indictment

Superseding Indictment S2 13 Cr. 161 (WHP) (the "Indictment") charges Stevenson in four Counts.   Count One charges Stevenson with conspiring to commit honest services wire fraud by accepting multiple bribe payments, in violation of Title 18, United States Code, Section 1349. (PSR ¶ 2).   Count Two charges Stevenson with conspiring to commit federal programs bribery and to violate the travel act by accepting bribe payments, in violation of Title 18, United States Code, Section 371.   (PSR ¶ 3).   Count Three charges Stevenson with committing federal programs bribery by accepting bribe payments, in violation of Title 18, United States Code, Section 666(a)(1)(B).   (PSR ¶ 4).   Count Five charges Stevenson with committing extortion under color of official right, in violation of Title 18, United States Code, Section 1951.   (PSR ¶ 6).

Trial against Stevenson commenced on January 6, 2014, and ended on January 13, 2014, when the jury found Stevenson guilty on all counts in which he was charged.   (PSR ¶ 9).

### B.    The Offense

During the relevant time period, Stevenson was a member of the New York State Assembly representing District 79, which includes various neighborhoods in the Bronx.   (PSR ¶ 16).   During 2012 and 2013, four businessmen were seeking to open and manage adult day care centers in the Bronx, including one on Westchester Avenue (the "Westchester Avenue Center") and one on Jerome Avenue (the "Jerome Avenue Center").   (PSR ¶ 18).   The Westchester Avenue Center was within Stevenson's Assembly District.   (PSR ¶ 18).   The Jerome Avenue Center was within the Assembly District of Assemblyman Nelson Castro, who was cooperating with the Government during the relevant time period.   (PSR ¶¶ 17-18).

The four corrupt businessmen made multiple bribe payments to Assemblyman Eric Stevenson:   (1) In July 2012, they gave Stevenson a check for $2,000 (PSR ¶ 23)[2]; (2) in September 2012, they gave Stevenson an envelope containing $10,000 in cash (PSR ¶ 24); (3) in January 2013, they gave a cooperating witness (the "CW") $5,000 in cash, which the CW gave to Stevenson after taking a $500 cut (PSR ¶¶ 26, 87-88)[3]; and (4) in February 2013, they gave the

---

[2]      Stevenson claims that this check was a proper campaign contribution that Stevenson "reported to the State Board of Elections in a legally compliant manner."   (Def. Ltr. 3-4, 6).   The evidence at trial, however, proved otherwise, as it made clear that this check was a bribe payment, and that Stevenson never reported this donation to the New York State Board of Elections as required by New York State Law.   (See GX904 (list of reported contributions); Tr. 527-33).

[3]      Paragraph 88 of the Presentence Report should be amended with the addition of the following sentence: "The CW gave the rest of the money to Stevenson inside the car."

Honorable Loretta A. Preska
May 15, 2014
Page 3

CW another $5,000 in cash in a hotel room in Albany, which the CW again gave to Stevenson after taking a small cut (PSR ¶¶ 27, 103-104).

In exchange for these bribe payments, Stevenson took several official actions to help the businessmen. For example, Stevenson had his Assembly office repeatedly contact Con Edison to press Con Edison to install a gas line at the Jerome Avenue Center. (PSR ¶¶ 53-65). Stevenson also reached out to the New York City Buildings Department (the "Buildings Department") on behalf of the businessmen. (PSR ¶¶ 78, 81). In addition, Stevenson hosted public events, paid for by the businessmen, to recruit senior citizens to attend the group's adult day care centers. (PSR ¶¶ 89, 95-97, 99, 106-107). Stevenson also arranged for legislation (the "Moratorium Legislation") to be drafted and introduced in the New York State Assembly that would prevent any other adult day care centers from opening in New York City for three years. (PSR ¶¶ 70-77, 79-80, 82, 84, 86, 91-92, 94, 98, 101, 105, 108). The CW and the corrupt businessmen together provided Stevenson with proposed language for the Moratorium Legislation, and that language was incorporated into the bill that was actually proposed nearly word for word. (PSR ¶ 82).

## C.    The Guidelines Calculation

The Probation Office calculated a total offense level of 24 and a Criminal History Category of I, which results in a Guidelines range of 51 to 63 months' imprisonment. (PSR ¶ 170). Neither the Government nor Stevenson disputes that calculation.


## DISCUSSION

## A.    The Applicable Law

The Guidelines still provide strong guidance to the Court in light of United States v. Booker, 543 U.S. 220 (2005), although they are no longer mandatory. "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that range "should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007). As the Second Circuit has remarked en banc, although the Guidelines do not dictate a presumptively reasonable sentence, they are not merely a "body of casual advice." United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (internal quotation marks omitted). The Guidelines' relevance throughout the sentencing process stems in part from the fact that, while they are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic 3553(a) objectives," Rita v. United States, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," Gall, 552 U.S. at 46; see also Rita, 551 U.S. at 349.

Honorable Loretta A. Preska
May 15, 2014
Page 4

After making the initial Guidelines calculation, a sentencing judge must then consider seven factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in Section 3553(a)(2).   To the extent a District Court imposes a sentence outside the range recommended by the Guidelines, the Court must "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'"  Cavera, 550 F.3d at 188 (quoting Gall, 552 U.S. at 50).

**B.      The Presentence Report**

Stevenson begins his sentencing submission by repeating a list of numbered objections he sent the Probation Office regarding the Presentence Report.   (Def. Ltr. 3-5).   The Government responded to these objections in a submission directly to the Probation Office, and the Probation Office has resolved all of these objections in the revised Presentence Report dated May 13, 2014. (PSR at 33-36, Addendum).   In large part, the Probation Office rejected Stevenson's objections, and to the extent the Probation Office made alterations, the Government has no further objections at this time.

One of the Government's objections to the draft Presentence Report, which the Probation Office incorporated, bears repeating here, because it weighs in favor of a serious sentence.   The initial draft of the Presentence Report reflected that, when he was interviewed by the Probation Office, Stevenson claimed that he has resided at an address on Hosmer Avenue in the Bronx for less than one year, and that before that, he "rented a room" on Prospect Avenue "in the Bronx" (the "Prospect Avenue Address").   (PSR ¶ 147).

As the Presentence Report now reflects, based on the Government's investigation, Stevenson did not live at the Prospect Avenue Address, as he claimed during his interview, since at least the year 2000.   Specifically, Con Edison records since May 2000 for the apartment at the Prospect Avenue Address are in the name of another individual ("Individual-1").   Individual-1, who resided in that apartment through at least in or about June 2013, was interviewed by law enforcement agents during the course of the investigation of this matter.   Individual-1 stated that Stevenson never lived at the apartment (though Individual-1 did state that mail addressed to the defendant was occasionally delivered to the apartment).   In addition, the superintendent at the Prospect Avenue Address for the past 13 years was interviewed by law enforcement agents and stated, after being shown a photograph of Stevenson, that he did not recognize the defendant. (PSR ¶ 147)

Standing alone, it is troubling that Stevenson falsely told the Probation Office that he lived at the Prospect Avenue Address.   But this misrepresentation is even more troubling in light of Stevenson's apparent motive:   The Prospect Avenue Address is within Stevenson's former Assembly District 79, and it appears that Stevenson misled the Probation Office regarding his true address in order to conceal the fact that he was not living in Assembly District 79, as required, either

Honorable Loretta A. Preska
May 15, 2014
Page 5

time he ran for an Assembly seat in that District.   To the extent Stevenson does not contest this
conduct, it weighs in favor of a Guidelines sentence.

**C.     The Appropriate Sentence**

A sentence within the Guidelines range is appropriate because Stevenson abused the powers
of his Assembly office in order to serve his own interests, rather than those of his constituents, by
selling official actions in exchange for cash bribes.   In his sentencing submission, Stevenson seeks
to blame everyone but himself for his unlawful conduct, and on this basis seeks a non-Guidelines
sentence, but his arguments do not warrant such a variance—these arguments should be rejected.

First, Stevenson argues that his co-defendants—the four corrupt businessmen—possessed
"vast[ly]" more wealth than Stevenson and "persisten[tly] . . . sought to use their financial advantage
to overpower" Stevenson.   (Def. Ltr. 2).   On this basis, Stevenson suggests, he should receive a
sentence comparable to those of his co-conspirators, who received sentences between 9 and 24
months' imprisonment.   (Def. Ltr. 2).   This argument should be rejected, because Stevenson is
more culpable than his co-defendants both as a matter of law and as a matter of fact.

As a matter of law, the applicable section of the Guidelines, Section 2C1.1, provides a higher
base offense level when the defendant in a bribery case is a public official, in recognition of the fact
that a public official who participates in a bribery offense is more culpable and poses a greater threat
to his community than the person paying the bribe.   This makes sense, because, among other
reasons, the public official's participation in a bribery scheme betrays the public's trust even more so
than the participation of the individuals paying the bribes.   That Stevenson was willing to sell his
official acts to the corrupt businessmen in exchange for money makes Stevenson more culpable than
them, not less, and the Guidelines themselves recognize this.

As a matter of fact, Stevenson's argument that he should receive a sentence comparable to
those given to his co-defendants fails for multiple reasons.   First, each of those co-defendants pled
guilty and accepted responsibility for their crimes, for which they received credit under the
Guidelines.   (PSR ¶¶ 11-14).   Stevenson, by contrast, did not accept responsibility, and claimed at
trial that he never took any money.   Even now, Stevenson continues to deny his responsibility, by
claiming that it was his co-defendants and the Government who pressured him into committing the
crimes of conviction.   (Def. Ltr. 2-3, 5-9).   Indeed, Stevenson argues that his Assembly salary of
$72,750 was not a "sustainable income," and made him peculiarly susceptible to bribery, but this
argument, of course, would apply to every member of the Assembly.   (Def. Ltr. 5).   Further, unlike
Stevenson, none of the co-defendants participated in all of the bribe payments to Stevenson, and
none of them was a public official himself.   Stevenson, by contrast, was an elected legislator, and
participated in every bribe payment.   The fact that Stevenson has not accepted responsibility and
the fact that he participated in all of the illegal transactions in his capacity as a public official
together distinguish him from his co-defendants.

Honorable Loretta A. Preska
May 15, 2014
Page 6

Stevenson also claims that not only did he feel financial pressure from his co-defendants, but also that the Government itself went to "lengths" to "extract such behavior from him." (Def. Ltr. 2). But the evidence at trial proved otherwise. It was Stevenson, and not the co-defendants or the Government, who repeatedly expressed his desire to get paid for his official acts. For example, after discussing the Moratorium Legislation with the CW, Stevenson asked, "Are Igor and them putting together a nice little package [of money] for me, huh?" (GX 111, 111T line 392). Stevenson also proposed bribing the Senate co-sponsor of the Moratorium Legislation. (GX 111, 111T lines 449-454 ("I wanna bless it to the sponsor too . . . . He gotta get a cha-ching, you know")). A few days after that conversation, Stevenson again asked the CW whether Igor would "bless everything," meaning pay Stevenson money, because, as Stevenson said, "I got the inauguration. I want a blessing in place." (GX 113, 113T, lines 30-35). In fact, it was Stevenson, and not the Government, who proposed an additional bribery scheme in which Stevenson would seek to obtain capital money from the Assembly to fund the corrupt businessmen's centers and split the money with the businessmen. (GX 111, 111T). That Stevenson repeatedly asked to get paid and proposed the capital money bribery scheme makes clear that his arguments about pressure should be rejected.

In addition to Stevenson's repeated requests for money, Stevenson's actions during the course of the scheme make clear that his decision to commit the charged crimes was the product of his own preference, and was not the product of persuasion by either the Government or his co-defendants. Throughout the scheme, Stevenson had to take numerous steps, which only he could take, in order to make the scheme a success. For example, he repeatedly had his staff contact Con Edison about the businessmen's center. In addition, in order to get the Moratorium Legislation on the Assembly floor, Stevenson had to take multiple steps, including getting the bill drafted by a bill writer, providing detailed justifications for the bill, and ultimately proposing the bill in the Assembly. The lengths to which Stevenson had to go to commit the charged crimes, instead of reporting his co-defendants to the appropriate authorities, confirm that he was ready and willing to commit those crimes.

To the extent Stevenson's sentencing submission claims that he was pressured to commit the charged crimes, it is notable that Stevenson did not raise an entrapment defense at trial. Rather, Stevenson's primary defense at trial was that he never received any of the cash payments from the businessmen. The fact that Stevenson is arguing a kind of entrapment for the first time here by making factual assertions about the extent to which he suffered various pressures reveals that those factual assertions should not be credited, and his argument given no weight. In any event, even if Stevenson had raised an entrapment defense at trial, it would have failed, because the evidence overwhelmingly demonstrated that Stevenson's decision to commit the crimes charged was his own.

While it is true, as Stevenson asserts, that he has done some good things for the community (Def. Ltr. 8-9), these acts do not outweigh the competing considerations that make a Guidelines sentence appropriate here, including to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence generally to criminal conduct.

Honorable Loretta A. Preska
May 15, 2014
Page 7

<u>See</u> 18 U.S.C. § 3553(a)(1), (2).[4]   Neither the Government nor Stevenson's codefendants are to blame for Stevenson's actions, which amounted to a betrayal of the people of New York State who elected him to serve their interests.   The Court should accordingly impose a Guidelines sentence.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the Guidelines range of 51 to 63 months' imprisonment would constitute a reasonable sentence in this case.[5]

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s_____

Paul M. Kriger
Brian A. Jacobs
Assistant United States Attorneys
Pishoy Yacoub
Special Assistant U.S. Attorney

cc:   Murray Richman, Esq. (by ECF and email)

---

[4]      The Probation Office, which recommended a sentence of 39 months' imprisonment, states in its justification that legislation Stevenson has "assisted in passing" has accomplished "immeasurable good."   (PSR at 40, Sentencing Recommendation).   But there is little basis for this assertion, other than Stevenson's own word.   What is clear is that the evidence at trial showed that Stevenson sought to pass legislation the primary effect of which would have been to enrich a group of four corrupt businessmen, to the detriment of the community.

[5]      A Guidelines sentence in this case would be consistent with several other sentences given to other New York State Legislators convicted in this District of corruption offenses.   See, e.g., <u>United States</u> v. <u>Efrain Gonzalez</u>, 06 Cr. 726 (WHP) (former New York State Senator sentenced to seven years in prison); <u>United States</u> v. <u>Anthony Seminerio</u>, 08 Cr. 1238 (NRB) (former New York State Assemblymember sentenced to six years in prison); <u>United States</u> v. <u>Carl Kruger</u>, 11 Cr. 300 (JSR) (former New York State Senator sentenced to seven years in prison).   While those cases all involved substantially more money than Stevenson received here, Stevenson's conduct—selling legislation in exchange for money—was as much an abuse of the public trust as anything in those cases.

UNITED STATES DISTRICT COURT
SOUTHERN DISRICT OF NEW YORK

- - - - - - - - - - - - - - - - x
                           :

UNITED STATES OF AMERICA           :      PRELIMINARY ORDER OF
                           :      FORFEITURE/MONEY JUDGMENT

         - v. -              :      S2 13 Cr. 161 (LAP)

ERIC STEVENSON,                 :

         Defendant.          :

- - - - - - - - - - - - - - - - X

WHEREAS, on or about August 15, 2013, ERIC STEVENSON (the "Defendant") was charged in four counts of a six-count Superseding Indictment, S2 13 Cr. 161 (the "Indictment"), with conspiracy to commit honest services fraud in violation of Title 18, United States Code, Section 1349 (Count One); conspiracy to commit bribery and violate the Travel Act in violation of Title 18, United States Code, Section 371 (Count Two); bribery in violation of Title 18, United States Code, Section 666(a)(1)(B) (Count Three); and extortion under color of official right in violation of Title 18, United States Code, Section 1951 (Count Five).

WHEREAS, the Indictment included a forfeiture allegation as to Counts One through Three and Five of the Indictment, seeking forfeiture to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), of all property, real

or personal, constituting or derived from proceeds traceable to said offenses;

WHEREAS, on or about January 13, 2014, the Defendant was convicted of Counts One through Three and Five of the Indictment after a jury trial;

WHEREAS, the Court finds that the United States is entitled to forfeiture of a sum of money equal to $22,000 in United States currency, representing the amount of proceeds traceable to the commission of the offenses charged in Counts One through Three and Five of the Indictment;

IT IS HEREBY ORDERED that:

1.   As a result of the offenses charged in Counts One through Three and Five of the Indictment, of which the defendant was convicted, a money judgment in the amount of $22,000 in United States currency (the "Money Judgment") shall be entered against the Defendant.

2.   Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment, this Preliminary Order of Forfeiture/Money Judgment is final as to the Defendant, ERIC STEVENSON, and shall be deemed part of the sentence of the Defendant, and shall be included in the judgment of conviction therewith.

3.   All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, made payable, in this instance to the "United States Marshals Service," and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007, and shall indicate the Defendant's name and case number.

4.   Upon execution of this Preliminary Order of Forfeiture/Money Judgment and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

5.   Pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, upon entry of this Preliminary Order of Forfeiture/Money Judgment the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate or dispose of the property, including depositions, interrogatories, requests for production of documents and to issue subpoenas, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

6.   The Court shall retain jurisdiction to enforce this Preliminary Order of Forfeiture/Money Judgment, and to

3

amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

      7.   The Clerk of the Court shall forward three certified copies of this Preliminary Order of Forfeiture/Money Judgment to Assistant United States Attorney Sharon Cohen Levin, Chief of Money Laundering and Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007.

SO ORDERED:


_____          _____
HONORABLE LORETTA A. PRESKA                          DATE
CHIEF UNITED STATES DISTRICT JUDGE